UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

MICHAEL CONWAY,

                       Defendant.

-----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
16-CR-52 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On February 18, 2016, Michael Conway ("Defendant") entered a plea of guilty to one count of wire fraud pursuant to the Information in this action. The Court now provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 48 months of incarceration, 3 years of supervised release, and must pay the special assessment of $100.00.

## BACKGROUND

Defendant pled guilty to wire fraud, in violation of 18 U.S.C. § 1343. *See* Plea Agreement ¶ 1, ECF No. 20; Information ¶¶ 10-11, ECF No. 18. The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the Section 3553(a) factors pursuant to 18 U.S.C. § 3553(c).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. When the Court chooses to impose a sentence outside the Sentencing Guidelines range, it "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The Court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

1

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (citations and internal quotations omitted). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first section 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on November 14, 1975, in Atlanta, Georgia. *See* Presentence Report ("PSR") ¶ 42, ECF No. 22. Defendant earned his high school diploma in June 1994, and attended some college, but did not complete his studies or earn a college degree. *Id.* ¶¶ 61-62. Defendant has been employed consistently since November 2001, and has held the following positions: Senior Director of Sales Operations at Neo Post, from November 2001 to April 2012; Owner and Operator of Choice Office Solutions LLC ("Choice Office"), from March 2012 to September 2015; Co-Owner and Co-Operator of Choice Capital/Choice Leasing LLC, from April 2014 to September 2015; various "odd jobs" between September 2015 and June 2016; and Account Representative at Bravo Printing, from June 2016 to the present. *Id.* ¶¶ 63-68.

At the time of the instant offense, Defendant was a resident of Verona, New Jersey, and was the President of Choice Office. *Id.* ¶ 6. Choice Office had approximately fifteen employees

and was in the business of buying and then leasing office equipment such as mailing equipment, copiers, and scanners to universities, hospitals, professional sports franchises, and other entities. *Id.*; Addendum to the Presentence Report at 1, ECF No. 24.

In or about and between March 2014 and August 2015, Defendant engaged in a fraudulent scheme, through which he induced two victims to finance forged lease agreements. PSR ¶¶ 7-21. The victims were John Doe, an owner and operator of a hedge fund, and De Lage Landen Financial Solutions Partner ("DLLFSP"), an entity that provides asset-based financial programs to equipment manufacturers, dealers, and distributors. *Id.* According to the Government, John Doe incurred a loss of $3,555,493.40 and DLLFSP incurred a loss of $1,203,516.00 as a result of Defendant's fraudulent scheme. *Id.* ¶ 18.

In March 2014, Defendant represented to John Doe that Choice Office had business relationships with the global technology company Pitney Bowes Inc. and the electronics company Sharp Corporation. *Id.* ¶ 9. Defendant asked John Doe for a business loan of $100,000.00 at a twelve percent interest rate, which John Doe provided shortly thereafter. *Id.* ¶¶ 9-10. Defendant also entered into an agreement with John Doe to become equal partners in Choice Holdings LLC ("Choice Holdings"). *Id.* ¶ 10. Under this agreement, Defendant would secure equipment leases with companies and John Doe would provide the necessary financing to purchase the office equipment required under the leases. *Id.* Between June 2014 and March 2015, Defendant represented to John Doe that he had entered into leasing agreements with fifty-eight entities and, based on these representations, John Doe provided Defendant and Choice Office approximately $3,100,000.00 in order to purchase the office equipment to be leased. *Id.* ¶ 11.

Several of the purported lease agreements Defendant provided to John Doe, however, were forged and/or fraudulent. *Id.* For instance, in July 2014, Defendant provided John Doe with a lease agreement purportedly between Choice Leasing and Tilcon New York, Inc. ("Tilcon NY") signed by Charles Middlebrook on behalf of Tilcon NY; a representative of Tilcon NY later reported no such lease agreement existed. *Id.* ¶ 12. Similarly, Defendant provided John Doe with a lease agreement purportedly between Choice Leasing and Montclair State University ("Montclair") and signed by Leonard Hughes on behalf of Montclair, but Mr. Hughes later stated he had never heard of Choice Office or Choice Leasing, was not authorized to purchase equipment for Montclair, did not sign the agreement, did not hold the title of Director of Office Services (as was represented on the lease agreement), and did not have access to the email address listed on the lease. *Id.* ¶ 13. Defendant also provided John Doe with a lease agreement between Choice Leasing and the New York Mets, purportedly signed by Tom Festa on behalf of the New York Mets, and John Doe wired Defendant approximately $500,000.00 to finance this agreement. *Id.* ¶ 14. An investigation later revealed the lease agreement was false as Mr. Festa's signature was forged, his title on the lease agreement was incorrect, and the terms of the lease were overstated. *Id.*

Shortly thereafter, Defendant induced DLLFSP to finance another forged lease agreement between Choice Leasing and the New York Mets, also purportedly signed by Mr. Festa on behalf of the New York Mets. *Id.* ¶¶ 15-17. DLLFSP agreed to the terms of the lease, but it requested an additional letter of authorization because of the amount of the loan and the fact that Mr. Festa was not the owner of the New York Mets. *Id.* ¶ 15. On March 16, 2015, Defendant emailed a DLLFSP representative a letter on New York Mets letterhead signed by "Jeffery Wilpon," Chief Operating Officer of the New York Mets, authorizing Mr. Festa to enter into contracts worth up

to $1,000,000.00. *Id.* ¶ 16. DLLFSP, in reliance on this letter and the lease agreement, wired $313,000.00 to Defendant. *Id.* An investigation later revealed that the lease agreement and letter were false, as Mr. Wilpon's name had been misspelled and his signature had been forged. *Id.* When DLLFSP attempted to collect the lease payments from the New York Mets in June 2015, the New York Mets denied having any agreement with Choice Leasing and refused to comply. *Id.* ¶ 17. DLLFSP informed Defendant, who told DLLFSP that he would forward DLLFSP payments the New York Mets had accidentally directed to him; DLLFSP never received these payments. *Id.*

### B. The Need for the Sentence Imposed

The second section 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court finds a significant sentence is necessary to accomplish the purposes of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). Defendant knowingly promulgated a fraudulent scheme that lasted for approximately seventeen months and induced two victims to finance numerous forged lease agreements. Defendant's actions defrauded his victims and caused them collectively to lose over $4,700,000.00. Defendant's criminal conduct displayed reckless disregard for the law, and accordingly the Court's sentence is necessary to promote respect for the law.

5

"Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." *Davis*, 2010 WL 1221709 at *2. The Court finds a significant sentence of incarceration is necessary to afford adequate deterrence, both specific and general, to criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B). Regarding specific deterrence, Defendant has shown a persistent willingness to engage in illegal and criminal conduct by promulgating a fraudulent scheme over many months that defrauded multiple victims. Defendant's criminality indicates he is in need of lengthy incapacitation to deter him from continuing such criminal activity. Regarding general deterrence, the Court finds a significant sentence will discourage others from engaging in wire fraud schemes and defrauding individuals out of their hard-earned money.

The Court's sentence will also protect the public from any further crimes by Defendant. Defendant's actions greatly harmed two victims by defrauding them out of over $4,700,000.00. The Court's sentence is designed to protect any others who may be defrauded by Defendant's schemes or from any additional criminal conduct by Defendant.

As Defendant does not require additional educational or vocational training, medical care, or other correctional treatment, this factor is irrelevant.

### C. The Kinds of Sentences Available

The third section 3553(a) factor requires the Court to consider "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant faces a maximum term of imprisonment of twenty years, 18 U.S.C. § 1343, and a maximum term of supervised release of three years, *id.* § 3583(b)(2). Because Defendant is convicted of a Class C Felony, Defendant is eligible for a term of probation of between one and five years, with a fine, restitution, or community service imposed absent extraordinary circumstances. *Id.* §§ 3561(c)(1), 3563(a)(2). Defendant may be fined up to $250,000.00 and

must pay the $100.00 mandatory assessment and the costs of his prosecution. *Id.* §§ 3013, 3571(b), 3572(a)(6). The Court's sentence thus falls within the kinds of sentences available for Defendant.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth section 3553(a) factor requires the Court to consider "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Defendant has a base offense level of seven pursuant to Guideline 2B1.1(a), which governs convictions under 18 U.S.C. § 1343. U.S. Sentencing Guidelines Manual § 2B1.1(a) (U.S. Sentencing Comm'n 2016) ("U.S.S.G."). Pursuant to Guideline 2B1.1(b)(1)(J), eighteen points are added to the base offense level because the loss caused by the instant offense was greater than $3,500,000.00. *Id.* § 2B1.1(b)(1)(J). Because Defendant demonstrated acceptance of responsibility for the offense and the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the Guidelines permit a decrease of three offense levels. *Id.* § 3E1.1(a), (b).

Taking these adjustments into account, Defendant's total offense level is twenty-two. *See* PSR ¶ 35. With a criminal history category of I, Defendant's Guidelines sentencing range is forty-one to fifty-one months of imprisonment. *See* U.S.S.G. Chapter 5, Part A. Because the offense is a Class C Felony, Defendant is eligible for a term of supervised release of between one and three years. U.S.S.G. § 5D1.2(a)(2); 18 U.S.C. §§ 3559, 3583(b). Defendant is ineligible for probation because the applicable Guidelines range is in Zone D of the sentencing table. U.S.S.G. § 5B1.1, cmt. n.1. The Guidelines further suggest that a fine of between $7,500.00 and

7

$75,000.00 may be imposed. *Id.* § 5E1.2(h)(1); U.S. Sentencing Guidelines Manual § 5E1.2(c)(3) (U.S. Sentencing Comm'n 2014). The Court must consider the costs of prosecution in determining whether to impose a fine and the amount of such fine. *See* U.S.S.G. § 5E1.5. Under the Guidelines, Restitution must be ordered. *Id.* § 5E1.1.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth section 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth section 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant pled guilty to wire fraud in violation of 18 U.S.C. § 1343. This crime carries a maximum term of twenty years of imprisonment. The Court's sentence falls within the range of sentences set forth by Congress and the President. This statutory provision adequately avoids disparities with other federal sentences that recognize the severity of Defendant's crime. Further, the Second Circuit has previously upheld similar sentences for wire fraud convictions. *See, e.g.*, *United States v. Azpurua*, 598 F. App'x 46, 48 (2d Cir. 2015) (affirming 48-month sentence for first-time offender convicted of wire fraud as substantively reasonable). Accordingly, this Court's decision falls within "the range of permissible [sentencing] decisions" for the Defendant's crime. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc).

### G. The Need to Provide Restitution

Lastly, the seventh section 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Pursuant to 18 U.S.C. § 3663A, restitution in the amount of $4,759,009.40 is ordered in this case. Restitution is due and owing as follows: $3,555,493.40 to John Doe, and $1,203,516.00 to DLLFSP.

### CONCLUSION

A sentence of 48 months of incarceration, to be followed by 3 years of supervised release, with $4,759,009.40 in restitution and the $100.00 mandatory assessment, is appropriate and comports with the dictates of section 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of section 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the Addendum to the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 11, 2017
Brooklyn, New York